## THE PROPRIETORS OF ST. LUKE'S CHURCH IN CHELSEA *vs.* RUGGLES SLACK & others.

Twelve persons, having associated themselves together, according to the forms and
usages of the protestant episcopal church, for the purpose of establishing public
worship under the name of Mount Zion Church in Chelsea, and having after-
wards organized themselves as a religious society under the Rev. Sts. c. 20, §§ 26,
27, 28, 29, and, by means of subscriptions of members, and contributions from other
sources, collected funds for the building of a church; subsequently, pursuant to
to a vote of the society at a regular meeting called for the purpose, applied to
the legislature, by a petition signed by all the members but one, who was absent
from the state, for a change of name and an act of incorporation as the proprie-
tors of St. Luke's Church in Chelsea: The legislature passed an act accordingly,
changing the name of the society, and incorporating three of the petitioners, with
their associates and successors, as a religious society, with all the powers and
privileges, and subject to all the duties, restrictions, and liabilities contained in
the twentieth and forty fourth chapters of the Rev. Sts., and with power to hold
real and personal estate, to be applied exclusively to parochial purposes: Certain
members of the society, who had subscribed towards the building of the church,
having had separate meetings before the passage of the act, continued to hold
them afterwards, and organized themselves separately, under the act, as the pro-
prietors of the church: The members of the society, also, including said sub-
scribers, accepted the act and organized under it as a religious society; and
each of the two bodies chose appropriate officers. It was held, that the act
did not create a new corporation, composed of the proprietors of the church
merely, but changed the name of Mount Zion Church in Chelsea, and incorpo-
rated the members thereof as a religious society, under the name of the proprie-
tors of St. Luke's Church in Chelsea.
On the refusal of the treasurer or clerk of a religious society, whose term of office
has expired, to deliver the records and papers of the society to his successor in
office, a writ of mandamus will be issued, on the petition of the society, to com
pel him to do so.

· THIS was a petition for a writ of mandamus. It was
originally presented in the name of the wardens and vestry
of St. Luke's Church in Chelsea, but, by leave of court, was
amended, and put into the form of a petition by the proprie-

tors of St. Luke's Church in Chelsea, by the wardens and
vestry. A motion was made by the respondents to dismiss
the amended petition, for various reasons set forth in the
motion; but this motion was overruled, and the case was
heard on its merits.

The petition set out, that on the 31st of August, 1841, a
religious society was formed in Chelsea, according to the
forms and usages of the protestant episcopal church, and
articles of association subscribed for that purpose by ten or
more members, who were qualified voters at the time; that
on the 7th of September, 1841, the parish was organized ac-
cording to the statute, under the name of Mount Zion Church
in Chelsea; that in 1844, the parish petitioned the legislature
for a change of name, and also for an act of incorporation,
for the purpose of holding real estate and personal property
for parochial purposes exclusively; that the prayer of this
petition was granted by an act of the legislature, approved
March 4th, 1844, incorporating the petitioners and their as-
sociates, by the name of the proprietors of St. Luke's Church
in Chelsea,* which was accepted by the parish; that at the
annual meeting in 1849, among other officers chosen by the
parish or religious society, Ruggles Slack was elected trea-
surer; that in June, 1849, Slack resigned his office of trea-
surer; that one Wilder was chosen treasurer in his stead;

* This act (*St.* 1844, c. 72,) is as follows:

" An act to incorporate the Proprietors of St Luke's Church in Chelsea, and for
other purposes.

" Be it enacted by the Senate and House of Representatives in General Court
assembled, and by the authority of the same, as follows:

" SECT. 1. From and after the passing of this act, the name of Mount Zion
Church, in Chelsea, shall be changed, and the said church shall be known and called
by the name of St. Luke's Church, in Chelsea.

" SECT. 2. William S. Bartlett, Stephen D. Massey, and William Knapp, their
associates and successors, are hereby made a corporation, by the name of the Pro-
prietors of St. Luke's Church, in Chelsea; with all the powers and privileges, and
subject to all the duties, restrictions, and liabilities set forth in the twentieth and
forty fourth chapters of the Revised Statutes.

" SECT. 3. Said corporation may hold real estate to an amount not exceeding
eight thousand dollars, and personal estate to an amount not exceeding two thou·
sand dollars; *provided* the same be applied exclusively to parochial purposes "

that a committee, duly appointed for the purpose, waited on Slack, and informed him of the appointment of another treasurer, and demanded of him the books and papers belonging to the parish for the use of the treasurer; and that Slack, after stating that he would deliver up the books and papers, ultimately wholly refused, and still did refuse, to deliver up the books and papers, but held them, contrary to the wishes of the parish. The petition further stated, that Edwin C. Barnes, one of the respondents, was elected clerk of the parish, and received the books and papers belonging to the parish for the use and assistance of their clerk; that Barnes subsequently resigned the office of clerk; that the books and papers were demanded of him; that he stated that he had given them to Edwin C. Bailey, the other respondent, to be by him delivered up to the parish, and that he regretted that Bailey had not delivered them up as he agreed to do; that the books were demanded of Bailey, who stated that he wished to inspect them before giving them up, but would do so in a few days; that the books were subsequently demanded of Bailey, who then peremptorily refused to deliver them up, and still retained them in his possession. The petition further stated, that neither Slack nor Bailey was a member of the parish, their names, at their request, having been taken from the list of members. The petitioners then prayed that a writ of mandamus might be directed to Slack, Barnes, and Bailey, commanding them, upon the receipt of the writ, to deliver up to the petitioners all the books and papers belonging to the parish.

The respondents, Slack, Barnes and Bailey, appeared and showed cause against the issuing of the writ of mandamus. They said, that if the petitioners were the owners of the books sought for, they might obtain possession of them by a writ of replevin; or if the books were secreted, so that they could not be replevied, then the remedy of the petitioners was by a bill in equity; or that if they were owned in common by the petitioners and respondents, or any other persons, then the mode of remedy should be by a bill in equity; that the court could not proceed to a decree for the petitioners, be-

cause a corporation called the proprietors of St. Luke's Church in Chelsea, whose right might be affected, had not been summoned and was not before the court; that the subject matter of the controversy was not of a public nature or of public concern; and that the petition did not appear to be supported by the affidavit of the petitioners, or of either of them.

The respondents further stated that if, in the opinion of the court, they were bound to show further cause, they admitted that, in or about the year 1841, a religious society was formed in Chelsea, according to the usages of the protestant episcopal church; they did not admit the organization, however, as stated by the petitioners, but left the petitioners to their proof: That a petition was presented to the legislature for a change of name; but they did not know or recollect whether it was the act of the parish or of individuals; the respondent, Slack, believing it to be the act of individuals: And that an act of the legislature was passed on or about the 8th of March, 1844, entitled "An act to incorporate the proprietors of St. Luke's Church in Chelsea, and for other purposes." The respondents did not admit, that the parish, as such, ever had any interest in the property of the corporation created by the act; but they claimed, that the title, legal or equitable, was in certain persons who had subscribed for stock or shares in a church edifice, and that it was now in said corporation. The respondents alleged, that under the act of the legislature, on the 8th of April, 1844, there was a distinct and separate organization of the parish formerly called Mount Zion Church, which was, by the first section of the act, allowed to take the name of St. Luke's Church, and also a distinct and separate organization of the proprietors of St. Luke's Church; and that, from that time to the present, the organization of the parish and of the proprietors had been kept separate and distinct each from the other; each body electing from year to year its own officers. The respondents admitted that Slack was elected treasurer of the church, meaning thereby the parish so called, and that he resigned that office.

The respondent Slack admitted that he had been notified

of the election of Wilder, as treasurer of the parish, and that he had been requested to deliver to Wilder the books and papers belonging to the parish ; alleged that he had no books or papers of the parish other than a memorandum book of moneys received and payments made by him as treasurer, which he was willing to exhibit; submitting, however, whether he was not entitled to hold said book for his protection; and said that he had not collected or claimed to collect any money belonging to the parish, except what he had accounted for. He also said that, at the annual meeting in 1849, he was elected treasurer of the corporation, called the proprietors of St. Luke's Church; that he accepted that office, and now held it, and that in that capacity he had collected, and claimed to collect, various sums, for all which he was ready to account as treasurer of the society.

The respondents further said, that Barnes had placed in the hands of Bailey certain books and papers; and they did not admit that the same belonged to the parish, except as afterwards stated; that, before the books were delivered by Barnes to Bailey, Bailey was duly elected clerk of the proprietors, and had since acted as their clerk ; Bailey being at the time, and still claiming to be, one of the vestry of the parish; that Barnes delivered to Bailey a book and certain papers relating, as the respondents believed, in part, to the business of the parish, and in part to the proprietors of St. Luke's Church. This volume Bailey claimed to hold as clerk of the proprietors; had offered to furnish copies of what relates to the parish ; and was ready to place the book and papers in the custody of the court, so that the petitioners could have access to the same; and the respondents prayed that the petition might be dismissed, and for their costs.

The substance of the evidence is sufficiently stated in the opinion.

*B. Rand* and *S. C. Maine*, for the petitioners, cited, to the point that the members of the parish were the persons intended to be incorporated by *St.* 1844, *c.* 72, and that they, and not the pew-owners, were entitled to the property in question; Rev. Sts. *c.* 20, §§ 25, 26, 27, 36, 37, 39, 40 ; *Howard* v. *First*

*Parish in North Bridgewater*, 7 Pick. 138; *Fassett* v. *First Parish in Boylston*, 19 Pick, 361; *People* v. *Runkel*, 9 Johns. 147; *Green* v. *Cady*, 9 Wend. 414; *Dutch Church* v. *Mott*, 7 Paige, 77; 3 Kent Com. 402, 419; *Stocks* v. *Booth*, 1 T. R. 428; *Tattersall* v. *Knight*, 1 Phillim. 232, 237; *Fuller* v. *Lane*, 2 Addams, 419, 426; *Walter* v. *Gunner*, 1 Hagg. Con. 321; *Partington* v. *Rector &c. of Barnes*, 2 Lee, 345; *Pettman* v. *Bridger*, 1 Phillim. 316, 324; *Blake* v. *Usborne*, 3 Hagg. Eccl. 726, 733; *Pawson* v. *Scott*, Sayer, 176; *Freligh* v. *Platt*, 5 Cow. 494; *First Baptist Church of Ithaca* v. *Bigelow*, 16 Wend. 28; *Heeney* v. *St. Peter's Church*, 2 Edw. Ch. 608; *In the matter of the Brick Presbyterian Church*, 3 Edw. Ch. 155; *Shaw* v. *Beveridge*, 3 Hill, 26; *Wentworth* v. *First Parish in Canton*, 3 Pick. 344; *Gay* v. *Baker*, 17 Mass. 435; 1 Burn. Eccl. Law, 358 to 364: To the point that the petitioners were entitled to a writ of mandamus; Tapping on Mandamus, 19, 22, 24, 25, 27; Angell & Ames on Corp. (3d ed.) 654, 655, [(4th ed.) §§ 711, 712]; Willcock on Corp. 356; *The King* v. *Dean Inclosure*, 2 M. & S. 80; *The King* v. *Bishop of Chester*, 1 T. R. 396, 404; *The King* v. *Stafford*, 3 T. R. 646, 652; *The Queen* v. *Victoria Park Co.* 4 P. & Dav. 639, 642; *The King* v. *Severn & Wye Railway*, 2 B. & Ald. 646; *Clarke* v. *Bishop of Sarum*, 2 Stra. 1082; *The Queen* v. *Norwich & Brandon Railway*, 4 Railw. Cas. 112; *The King* v. *Bank of England*, 2 Doug. 524, 526; *The King* v. *Nottingham Old Water Works*, 1 Nev. & Per. 480; *Western* v. *Brooklyn*, 23 Wend. 334; *McCullough* v. *Brooklyn*, 23 Wend. 458, 461; *First Parish in Sudbury* v. *Stearns*, 21 Pick. 151; *People* v. *New York Superior Court*, 10 Wend. 285; *People* v. *New York*, 10 Wend. 393, 396; *People* v. *Albany*, 12 Johns. 414; Selw. N. P. (11th ed.) 1077: And to the point that the writ might be directed to a former officer, and any one aiding him in withholding the books; Angell & Ames on Corp. (3d ed.) 648, [(4th ed.) § 707]; *Rex* v. *Wildman*, 2 Stra. 879; *Anon.* 1 Barnard. 402; *The King* v. *Ingram*, 1 W. Bl. 50; *Rex* v. *Clapham*, 1 Wils. 305; *Town Clerk of Nottingham's Case*, 1 Sid. 31; *Taylor* v. *Henry*, 2 Pick. 397; *First Parish in Sudbury* v. *Stearns*, 21 Pick. 151; *Commonwealth* v. *Athearn*,

3 Mass. 285; *Rex* v. *Barker*, 3 Bur. 1265; Wilcock on Corp. 395; Bac. Ab. Mandamus, D; *The King* v. *Owen*, 5 Mod. 314; *Crawford* v. *Powell*, 2 Bur. 1013; Tapping on Mandamus, 49, 50.

*F. O. Watts*, for the respondents, to the point that the petitioners were not entitled to the books and papers in question, cited Angell & Ames on Corp. (3d ed.) 64, [(4th ed.) § 76]; *Penobscot Boom Corporation* v. *Lamson*, 4 Shepl. 224; *Second Congregational Society in North Bridgewater* v. *Waring*, 24 Pick. 304; *Howard* v. *Hayward*, 10 Met. 408; *St.* 1825, *c.* 43; Rev. Sts. *c.* 20, §§ 26 – 28, 31 – 36, 37; and to the point that a mandamus should not be granted in this case; *Ex parte Fleming*, 4 Hill, 581; *Woodman* v. *Somerset*, 11 Shepl. 151; Angell & Ames on Corp. (3d ed.) 631, 654, [(4th ed.) §§ 698, 712]; *Rex* v. *Barker*, 3 Bur. 1265; *Montague* v. *Dudman*, 2 Ves. Sen. 396; Story Eq. Pl. (4th ed.) § 553, note (4); *Shipley* v. *Mechanics' Bank*, 10 Johns. 484; *Ex parte Nelson*, 1 Cow. 417, 423; *People* v. *Brooklyn*, 1 Wend. 318, 324; 1 Paine & Duer's Prac. 78; *Oakes* v. *Hill*, 8 Pick. 47; *Carpenter* v. *Bristol*, 21 Pick. 258; *Commonwealth* v. *Rosseter*, 2 Binn. 360; *People* v. *Throop*, 12 Wend. 183; *Ex parte Firemen's Ins. Co.* 6 Hill, 243; *People* v. *Stevens*, 5 Hill, 616; *Strong, Petitioner*, 20 Pick. 484, 497; *Harrington* v. *Berkshire*, 22 Pick. 263, 268; *The King* v. *Margate Pier*, 3 B. & Ald. 221.

FLETCHER, J.* The petitioners maintain that, by the act of the legislature of March 8th, 1844, the name of the parish or religious society, before that time known as Mount Zion Church, was changed to that of St. Luke's Church in Chelsea; and that the members of said parish or religious society were incorporated by the name of the proprietors of St. Luke's Church in Chelsea, with power to hold real and personal estate for parochial purposes only; that thus Mount Zion Church became an incorporated parish, by the name of the proprietors of St. Luke's Church in Chelsea; and that the church and land and property which have been occupied by the parish, rightfully and lawfully belong to the parish in-

* METCALF, J., did not sit in this case.

corporated by the act of the legislature, by the name of St.
Luke's Church in Chelsea, and formerly known by the name
of Mount Zion Church.

On the other hand, the respondents maintain that, by the
act of the legislature, the name of Mount Zion Church was
changed to St. Luke's Church in Chelsea; that with this
new name the former remained a parish, for parish purposes,
wholly under its old organization, and was not otherwise
affected by the act; that said act, having thus in the first
section disposed of and dismissed under a new name Mount
Zion Church, proceeds to create and incorporate, and did
create and incorporate, an entirely new and distinct corpora-
tion, by the name of the proprietors of St. Luke's Church in
Chelsea; that this new corporation is not a parish, nor created
for parochial purposes, but for the purpose of holding pro-
perty; that the church edifice and land and property which
have been occupied and used by the parish, belong to and are
owned by this new corporation, the parish having no title to
the same; and that the parish of St. Luke's Church, and the
corporation called the proprietors of St. Luke's Church in
Chelsea, are not one and the same, but distinct and independ-
ent bodies, organized for different purposes. In support of
their respective positions, the petitioners and respondents rely
upon various affidavits and documents filed in the case, and
referred to and commented on at the hearing.

The controversy turns upon the construction of the act of
March 8th, 1844. The question is, did that act incorporate the
members of Mount Zion Church merely as a parish or reli-
gious society, for parochial purposes, with power to hold pro-
perty for such purposes merely, or did it create and incorpo-
rate an entirely new corporation, not for parochial purposes,
but to hold property as a joint stock company? To settle
this question, it is necessary to examine and consider the evi-
dence in the case. It appears very clearly and satisfactorily
from the evidence in the case that, in August, 1841, certain
persons, twelve in number, associated themselves together as
members of Mount Zion Church, a religious society in Chel-
sea, according to the forms and usages of the protestant epis-

20 *

copal church; that they shortly afterwards organized as a parish or religious society, according to the statute, by the name of Mount Zion Church in Chelsea; that soon after their organization a hall was procured as a place for public worship, in which they had public service, and that in about a year a rector was called and settled; and that, in the spring of 1843, various meetings were held by the worshippers of Mount Zion Church, for the purpose of devising ways and means of raising money to build a church. To aid this object, an appeal to the public was published in a newspaper in Boston, in July, 1843, which appeal was afterwards printed in another form, and circulated in Boston and elsewhere. This appeal was also bound in a subscription book, and a considerable amount was obtained by subscriptions of various persons out of Chelsea. The ladies of the parish, also, raised a considerable sum by fairs and otherwise. The communion offerings and monthly collections of the parish were also directed to this object. A sum from the income of the parish was also appropriated; various individuals in Chelsea contributed; and a considerable sum was raised from various members of the parish. In the spring of 1843, at a meeting of the wardens and vestry, a committee was appointed to wait on the agent of the Winnisimmet Company, with a view to obtain from the company a gift to the parish of a piece of land towards erecting a church or chapel; and a lot of land was ultimately given by the company, which was sold, and the proceeds added to the fund for erecting the church. After the act of incorporation, a deed of the land was made to the proprietors of St. Luke's Church in Chelsea.

In February, 1843, the rector purchased two lots of land in Chelsea, on favorable terms, with a view to offer them to the parish at cost; and in October of that year, he offered the land to the parish on certain conditions, and the offer was accepted. While thus intent upon the object of obtaining for themselves a house in which to worship, at a meeting of Mount Zion Church, duly called for that purpose, it was voted, that a petition be presented to the legislature, at their then present session, praying them for leave to change the

name of the same to that of St. Luke's Church, and for an act of incorporation as the proprietors of St. Luke's Church in Chelsea.   This vote is for an act of incorporation as the proprietors of St. Luke's Church in Chelsea.   In pursuance of this vote, a petition was presented, which states the original organization of Mount Zion Church, and then proceeds: " The said church now propose to erect a suitable edifice in which to worship, and the records of said church being incomplete, by reason of circumstances beyond their control, in order to the better management of their affairs, and to greater security in the same, they pray for a special act of incorporation, and as said church has, since its organization, increased in numbers, a very great majority, if not the whole body, would prefer to be called by the name of St. Luke's Church in Chelsea."   This petition was signed by all the male members of the parish but one, who was then out of the country. Upon this petition the act of the legislature was passed; the first section changing the name of Mount Zion Church to St. Luke's Church; and the second section making William S. Bartlett, Stephen D. Massey, and William Knapp, three of the signers of the petition, and their associates and successors, a corporation by the name of the proprietors of St. Luke's Church in Chelsea, with power to hold real estate to an amount not exceeding eight thousand dollars, and personal estate not exceeding two thousand dollars, to be applied exclusively to parochial purposes.   The term " associates" in the act doubtless was used to include the other signers of the petition, with those particularly named, rather than to insert the names of all the individuals who had petitioned for the act of incorporation.   Looking at the evidence thus far only, it would seem to be quite too clear for controversy, that, by the act of March 8th, 1844, the Mount Zion Church was incorporated as a parish or religious society, by the name of the proprietors of St. Luke's Church in Chelsea, with power to hold real and personal estate for parochial purposes only.   All the male members of Mount Zion Church but one, who was absent, in pursuance of a vote of that parish petitioned to be thus incorporated ; and they were thus incorporated, and

the act duly accepted. The terms of the act are clear and intelligible, both as to the persons incorporated, and the object of the incorporation. The act is in no way doubtful or ambiguous as to its meaning or purpose. The members of Mount Zion Church are clearly and expressly incorporated, and incorporated manifestly as a parish or religious society, by the name of the proprietors of St. Luke's Church in Chelsea, with the power of holding real and personal property for parochial purposes, and for no other purposes.

But it is said, and said truly, on the part of the respondents, that, from the latter part of September to the early part of December, 1843, and before the application for the act of incorporation, several meetings were held by the subscribers to the stock for the erection of a church or chapel. But there is nothing in the records of the meeting of these subscribers to the stock, showing any intention of these persons to obtain or attempt to obtain any act of incorporation, or to become a corporation. The respondents further say, and say truly, that after the act of the legislature, there were two distinct organizations; that there was an organization of the parish of St. Luke's Church, as one body, and an organization of the proprietors of St. Luke's Church, as another body; and that these two bodies held separate meetings, and chose their separate and appropriate officers, and so continued down to the time of filing this petition; the same individuals, to a considerable extent, forming both bodies, though there were some who acted only in one. These two bodies, the respondents maintain, were two distinct, independent corporations; St. Luke's Church being the same corporation originally organized as a parish under the Rev. Sts. c. 20, by the name of Mount Zion Church, (the name only being changed by the act of the legislature,) and continuing to be and to act as a parish with parish officers; and the proprietors of St. Luke's Church being a new and distinct corporation, originally created by the act of the legislature, not as a parish or for parish purposes, but as a joint stock company, merely with power to hold property and manage financial affairs; that the church and land purchased with the money raised by subscription, and contribu-

tions and other means put in motion by the original parish, with a view to obtain a house of public worship for their parish, belong exclusively to this new joint stock corporation, and not to the parish; that the parish, with their appeal to the public for aid, and their subscription papers, and their efforts towards improving their condition, all along down from 1843, have got a new name and nothing else; that the church edifice, erected in a great measure by the charitable contributions of the christian public to a religious society, and solemnly consecrated for divine service, belongs not to the parish as its place of worship, but to a merely secular, property-holding corporation, whose functions are wholly financial. But it is quite impossible to maintain this view of the case. The act of the legislature of March, 1844, surely did not create a joint stock company; there was no application for such a corporation, and the terms of the act do not import the creation of such a corporation.

The members of an existing parish applied for a change of name and an act of incorporation, for the reasons stated in the petition. The prayer of this petition was granted by the legislature, and an act of incorporation was passed, authorizing the corporation to hold property, to be applied exclusively to parish purposes. This most manifestly was incorporating a parish for parish purposes, and not a joint stock company, merely to hold property. If the corporation, the proprietors of St. Luke's Church in Chelsea, is not a parish but a joint stock company, there is nothing to show who are the members of the corporation, or what individuals are the lawful owners of the land and property which have been occupied by the parish.

It is stated in the evidence, that three persons only of the original contributors of the funds for erecting the church edifice, and whose united subscriptions thereto amounted only to between two and three hundred dollars, are now associated with those who claim to be proprietors of the church edifice. If the corporation of the proprietors of St. Luke's Church in Chelsea are a joint stock company merely, and they own the church edifice and land, there is nothing to limit or

restrict their right.   If they have a legal title to the property, there is nothing to show that it is any thing less than an absolute title, so that they may dispose of the property as they please, sell to whom they please, for such a sum as they please, and appropriate the proceeds as they please.   And thus all the sums contributed in various ways, to erect a church for a parish, might go to the benefit of a joint stock company, and the parish have nothing.

But this cannot be the just and legal effect of the act of incorporation.   The different organizations, which took place after the passage of the act, were irregularities of proceeding, the result no doubt of misunderstanding and mistake.   Some of the contributors probably expected to obtain the amount of their contributions in pews, and they took upon themselves the management of the financial affairs.   It is a matter of frequent occurrence, that persons contribute to funds for a church, with the agreement that the amount shall be re-paid in a pew or pews.   Those of the parish who had not contributed to the fund, generally, if not in every instance, withdrew from the meetings held for financial affairs, doubtless without any particular consideration as to their rights, or of the nature or effect of these separate organizations.   But these mistakes and misunderstandings and irregularities of proceedings, cannot alter the law or the legal rights of the parties.   There is but one corporation.   The legislature did not incorporate a joint stock company, or a corporation empowered merely to hold property; but incorporated certain persons as a parish for parochial purposes, in express terms, by the name of the proprietors of St. Luke's Church in Chelsea.   " The proprietors of St. Luke's Church in Chelsea," is the corporate name of the parish, and the property belonging to the proprietors of St. Luke's Church in Chelsea is the property of the parish; and there is no other corporation, and no other persons who have any legal title to such property.

A question was made on the hearing, whether the writ of mandamus was the proper form of remedy for the petitioners, even if their claim of right was established ; and it was said, that the proper remedy was by replevin or bill in equity.

There was evidence, that the petitioners had endeavored to obtain the books and papers sought for, by a writ of replevin, but without success.

It was said, that the writ of mandamus could not be claimed as a matter of right; and that the application was to the discretion of the court. But this is not an arbitrary discretion; it is a judicial discretion; and when there is a right, and the law has established no specific remedy, this writ should not be denied.

It was further said, that this writ was granted only to prevent a failure of justice, and generally only for some great public purpose. But the value of the matter, or the degree of its public importance, is not to be too nicely and scrupulously weighed. If the writ is to be granted only in a case of public importance, this is a case of public importance The preservation of the rights, and securing the peace and quiet and order of a parish and religious society, is a matter of great public interest and importance.

This writ is no doubt more freely and frequently granted at the present time than it was formerly. It lies to a former town clerk, or clerk of a company, to deliver to his successor the common seal, books, papers and records of the corporation, which belong to his custody. Indeed, it lies to any person, who happens to have the books of a corporation in his possession, and refuses to deliver them up. In fact, the writ of mandamus is the peculiar and appropriate remedy in a case like the present.                 *Writ granted.*